JS6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-06172-RGK-MAA | Date | September 22, 2025 |
|---|---|---|---|
| Title | *Dress Forum, Inc. v. First-Citizens Bank & Trust Company et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**        (IN CHAMBERS) Order Re: Defendant's Motion to Transfer Venue [13]

## I.        INTRODUCTION

On July 8, 2025, Dress Forum Inc. ("Plaintiff") filed a Complaint in this Court against First-Citizens Bank & Trust company ("Defendant") alleging six breach of contract and tort claims concerning over half a million dollars fraudulently transferred from Plaintiff's online banking account. (ECF No. 1.)

Presently before the Court is Defendant's Motion to Transfer this action to the Eastern District of North Carolina. (ECF No. 13.) Plaintiff timely filed its Opposition to Defendant's Motion. (ECF No. 18.) For the following reasons, the Court **GRANTS** Defendant's Motion.

## II.        FACTUAL BACKGROUND

In February 2020, Plaintiff, a California corporation, began banking with Defendant, a North Carolina corporation. At all relevant times, Plaintiff maintained a business checking accounting with Defendant and has used its "Digital Banking" and "Commercial Advantage" services.

When Plaintiff opened the checking account, it entered into a variety of contracts with Defendant, including the Wire Transfer Agreement, First Citizens Digital Banking Commercial Advantage Customer Agreement, and 2020 Treasury Management Services Agreement ("2020 TMS Agreement"). The Wire Transfer Agreement and 2020 TMS Agreement contained unilateral amendment clauses which allowed Defendant to unilaterally amend the contracts as long as it provided Plaintiff sufficient notice. In 2022, the 2020 TMS Agreement and Wire Transfer Agreement were amended to become the Master Treasury Management Services Agreement ("Master Agreement")[1]. Defendant

---

[1] In 2024, Defendant again amended the Master Agreement (the "2024 Agreement"). (Crabbe Decl. Ex. D, ECF No. 14-2.) In its Opposition, Plaintiff argues simultaneously that the 2022 Master Agreement cannot apply because the 2024 Agreement "supersedes" the 2022 Agreement, and the 2024 Agreement cannot apply because Defendant has not demonstrated it provided notice of the 2024 amendment. (Opp'n 2:5–11, ECF. No. 18.) However, since the 2024 amendments were made

---

JS6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-06172-RGK-MAA | Date | September 22, 2025 |
|---|---|---|---|
| Title | *Dress Forum, Inc. v. First-Citizens Bank & Trust Company et al* | | |

provided notice of the amendment to Plaintiff by flagging the update and providing a hyperlink to the entire agreement in the Plaintiff's account statement.

The Master Agreement contains a forum-selection clause ("FSC"), which reads: "[a]ny legal action or proceeding arising out of or relating to this TMS Agreement must be instituted in the courts of the State of North Carolina or in the United States District Court for the Eastern District of North Carolina." (Crabbe Decl. Ex. B at 17, ECF No. 14-2).

Plaintiff alleges a data breach on Defendant's systems caused $1,062,716.86 to be fraudulently wired from Plaintiff's account, with $521,015.13 still unrecovered. Plaintiff alleges a pattern of Defendant's gross negligence allowed the funds to be transferred despite Plaintiff providing Defendant notice of the suspicious activity.

### III.  JUDICIAL STANDARD

Section 1404(a) allows a district court to "transfer any civil action to any other district . . . where it might have been brought or to any district . . . to which all parties have consented." 28 U.S.C. § 1404(a). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations" to determine whether "a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–63 (2013) (quoting § 1404(a)).

However, "[t]he presence of a valid forum-selection clause requires district courts to adjust their . . . analysis." *Id.* at 63. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for the pursuit of the litigation." *Id.* at 64. The Court must therefore deem the private-interest factors to weigh entirely in favor of the preselected forum. *See id.* "As a consequence, a district court may consider arguments about public-interest factors only. . . . Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Since judicial precedent favors upholding the validity of FSCs, "the opposing party has the burden 'to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Manetti-Farrow, Inc. v. Gucci Am., Inc.*,

---

after the fraudulent wire transfers at issue occurred, the 2022 amended agreement governs the events here. *See Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 108 F. App'x 917, 921 (5th Cir. 2004) (absent express language, an amendment does not retroactively effect any rights accrued under a prior version of the agreement); *Rothmans Tobacco Co. v. Liggett Grp., Inc.*, 770 F.2d 1246 (4th Cir. 1985) ("For contract actions, accrual occurs at the time of breach."). Thus, the Court considers only whether the 2022 Agreement applies.

JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-06172-RGK-MAA | Date | September 22, 2025 |
|---|---|---|---|
| Title | *Dress Forum, Inc. v. First-Citizens Bank & Trust Company et al* | | |

858 F.2d 509, 515 (9th Cir. 1988) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972)).

"In reviewing the enforceability of a forum selection clause, the Court is not required to accept the pleadings as true and may consider facts outside of the pleadings." *Sawyer v. Bill Me Later, Inc.*, No. 10-cv-04461 SJO JCGX, 2011 WL 7718723, at *5 (C.D. Cal. Oct. 21, 2011). "However, the Court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Id.*

## IV.   DISCUSSION

Defendant argues that this action should be transferred to the Eastern District of North Carolina due to the mandatory FSC contained in the governing banking agreement. In support of its Motion, Defendant offers three arguments in series: (1) the Master Agreement—which contains the FSC—is binding on Plaintiff, (2) the Master Agreement applies to the claims at issue, and (3) the FSC is enforceable. The Court will address each argument in turn.

### A.   Applicability to Plaintiff

Defendant argues that the Master Agreement is binding on Plaintiff because it assented to the unilateral amendments clause in the 2020 TMS Agreement, and Defendant complied with the contractual notice requirements after Defendant unilaterally amended the agreement to include the FSC. The Court agrees.

Traditional contract principles generally require that alteration to terms of a contract require new consideration. *Wheeler v. Wheeler*, 299 N.C. 633, 637 (1980).[2] However, "[w]ritten contracts are to be construed and enforced according to their terms." *Galloway as Tr. of Melissa Galloway Snell Living Tr. Dated May 1, 2018 v. Snell (Galloway)*, 384 N.C. 285, 287 (2023) (internal quotations omitted). When the parties' intent is clearly expressed through the written contract, it must be enforced as it is written. *Canteen v. Charlotte Metro Credit Union*, 386 N.C. 18, 23 (2024). Thus, when parties have mutually agreed to a unilateral change-of-terms provision, said provision must be enforced as it is written. *Id.* Furthermore, "[p]ersons entering contracts . . . have a duty to read them and ordinarily are charged with knowledge of their contents." *State Farm Mut. Auto. Ins. Co. v. Gaylor*, 190 N.C. App. 448, 107 (2008).

In the context of "browsewrap agreements," which are terms and conditions on a website that do not require the user to affirmatively consent to, the "notice inquiry focuses on the design and content of the relevant interface and asks whether it would put a reasonably prudent user on notice of a contract on

---

[2] All contracts in this action contain a choice of law clause, providing that the agreements shall be governed and construed in accordance with the laws of the State of North Carolina. (Compl. Ex. A at 9, ECF No. 1-1; Compl. Ex. B at 14, ECF No. 1-2; Crabbe Decl. Ex. A at 15, ECF No. 14-1; Crabbe Decl. Ex. B at 17, ECF No. 14-2). As a result, the Court will apply substantive North Carolina law.

JS6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-06172-RGK-MAA | Date | September 22, 2025 |
|---|---|---|---|
| Title | *Dress Forum, Inc. v. First-Citizens Bank & Trust Company et al* | | |

offer and its terms." *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 152 (4th Cir. 2025). When the offeror provides "clear and reasonably conspicuous notice that there are contract terms available by scrolling down or clicking a hyperlink, the user is on reasonable notice of those terms even if she never reads them." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 220 (4th Cir. 2024).

Plaintiff concedes that the Wire Transfer Agreement, Commercial Advantage Agreement, and 2020 TMS Agreement are binding. All three contracts contain nearly identical amendments clauses, permitting Defendant to amend the agreements at any time pursuant to sufficient notice. The 2020 TMS Agreement, which Plaintiff's representative signed, provides that notice may be provided to Plaintiff by "written or electronic communications," including "messages on or with the regular deposit account statement for [Plaintiff's] Service Accounts. . . ." (Crabbe Decl. Ex. A at 12, ECF. No. 14-1 ("2020 TMS Agreement")). In 2022, in Plaintiff's July bank statement, Defendant included a notice, flagged in a bold heading "Notice of Change," that the terms and conditions have changed with an effective date of July 18, 2022, and included a link to view the new agreement, the Master Agreement. (Crabbe Decl. Ex. A at 13, ECF. No. 14-3 ("Dress Forum Statement")). Applying the traditional browsewrap inquiry, the notice of the new terms was placed conspicuously right after the daily balance summary (which a customer is likely to view) and with a bold header, which would put a reasonably prudent person on notice of the new terms. Even though the Master Agreement was provided via hyperlink on a printed document, the link was not long so it would have been easy for a customer to simply type the link into their web browser and review the new terms. Thus, Plaintiff was on sufficient notice of the amendment including the FSC and assented to it by continuing to use Defendant's services.

Accordingly, the Court proceeds to consider whether the FSC applies to this action.

**B.      Scope of the FSC**

Plaintiff contends that even if the Master Agreement is binding, it does not govern the claims at issue here. Plaintiff argues that because the agreement incompletely describes the terms of service applicable to the "Commercial Advantage" and "Digital Banking" services and instead links to respective secondary agreements, those services are carved out of the Master Agreement and the FSC does not apply to actions arising from those services. (Opp'n 2:12–24, ECF. No. 18). The Court is not convinced.

Federal law applies to the interpretation of FSC's. *Manetti-Farrow, Inc.*, 858 F.2d at 513. When a contract is clear and unambiguous, its meaning and legal effect are questions of law for the court. *Agricredit Acceptance, LLC v. UAP Nw.*, 65 F. App'x 187, 189 (9th Cir. 2003). It is well settled that a contract should be interpreted to give meaning to each of its provisions. *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278–279 (9th Cir. 1992).

JS6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-06172-RGK-MAA | Date | September 22, 2025 |
|---|---|---|---|
| Title | *Dress Forum, Inc. v. First-Citizens Bank & Trust Company et al* | | |

Plaintiff's reading of the contract is inaccurate. Chapter IV Section 20 of the Master Agreement, titled "Wire Transfer Services," details the terms and conditions for use of Defendant's "Wire Transfer Services" through: 1) First Citizens Digital Banking Commercial Advantage ("Commercial Advantage"); and 2) First Citizens Digital Banking ("Digital Banking"). (Crabbe Decl. Ex. B at 65, ECF No. 14-2). Chapter IV Section 20.1 provides that "[t]he Customer(s) of either service agree that use of the Wire Transfer Services offered by First-Citizens Bank & Trust Company shall be governed by this Agreement, the TMS General Terms and Conditions ('TMS General Terms'), other First Citizens online wire transfer agreements, and any applicable User Guides." *Id.* The FSC is within the "General Terms of Conditions" section of the agreement. *Id.* at 17.

Here, Plaintiff's claims concern the November 2024 wire transfers, which relate to Defendant's Commercial Advantage and Digital Banking services. Interpreting the contract based on its plain reading, the Court finds that the wire transfers are thus governed by the Master Agreement. To interpret the contract otherwise would render Chapter IV meaningless. As a result, the present action arises out of and relates to the Master Agreement and the FSC applies.

### C.    Enforceability of the FSC

Plaintiff argues that even if the FSC is valid and applicable, the public interest factors are sufficient to overcome the Motion to Transfer. In determining whether to enforce an FSC, federal law applies. *Manetti-Farrow, Inc.*, 858 F.2d at 513. "A forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972). The Ninth Circuit has held that to overcome a valid FSC, a plaintiff must show that:

> (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court."

*Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *Bremen*, 407 U.S. at 15, 18).

Plaintiff does not contend that the FSC is the product of fraud or overreaching, so only the latter two exceptions are at issue. Firstly, Plaintiff argues "California has a strong public interest in providing a forum for its resident and citizens who are tortiously injured." (Opp'n 16:1–20). However, the authorities Plaintiff relies on all discuss California's public interest in the context of a standard motion to transfer venue, not in opposition to an FSC. *See Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201,

JS6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-06172-RGK-MAA | Date | September 22, 2025 |
|---|---|---|---|
| Title | *Dress Forum, Inc. v. First-Citizens Bank & Trust Company et al* | | |

1212 (9th Cir. 2009); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006); *Ito v. Tokio Marine & Fire Ins. Co., Ltd.*, 166 Fed. App'x 932, 935 (9th Cir. 2006); *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115–1116); *Ridgway v. Phillips*, 383 F. Supp. 3d 938, 948 (N.D. Cal. 2019). Plaintiff has not provided any authority, judicial or statutory, that California's interest in providing such a forum is so strong that it can overcome a valid FSC. Secondly, Plaintiff has demonstrated that litigating their claims in North Carolina would be inconvenient but has not shown that it is so "gravely difficult" that it "will for all practical purposes be deprived of [its] day in court," as the last exception requires. Arguments that litigating in North Carolina would be inconvenient for it and its witnesses were waived when Plaintiff agreed to the FSC. Accordingly, the FSC is enforceable and should be applied to this action.

## V.      CONCLUSION

For the foregoing reasons, Defendant's Motion to Transfer Case to Eastern District of North Carolina is **GRANTED**.


**IT IS SO ORDERED.**


_____ : _____

Initials of Preparer                 JRE/gz